## C. L. WILLEY v. ALLEGHENY CITY.

ERROR TO THE COURT OF COMMON PLEAS NO. 1 OF ALLE-
GHENY COUNTY.

490
³406

Argued October 25, 1887—Decided January 16, 1888.

1. A municipality, the owner of a river wharf, charging tolls for the security offered to persons invited to land thereat, is bound to provide such appliances for securing and holding boats and rafts against the current of the stream as are sufficient for that purpose.
2. The " utmost care" due from the municipality is such as to require the use of all the appliances and precautions that a diligent man, owning the boats or rafts and owning the wharf, would deem it proper to employ in the preservation of his own property from the perils of the river.
3. Whatever a diligent man would deem necessary under any given circumstances for the preservation of his own property, must be done by the individual, or corporation, or city, that undertakes, for hire, the preservation of property for the public : per Mr. Justice WILLIAMS.

Before GORDON, C. J., PAXSON, STERRETT, GREEN and WILLIAMS, JJ.; TRUNKEY and CLARK, JJ.; absent.

No. 53 October Term 1887, Sup. Ct.; court below, No. 311 March Term 1886, C. P. No. 1.

To the first Monday of February, 1886, C. L. Willey brought an action in case against the city of Allegheny to recover damages for the loss of two rafts of timber swept away by the high water of June, 1881.

At the trial on December 17, 1886, the facts appeared : One

of the rafts, containing timber of the value of about $1,900, lay at the wharf immediately above the railroad bridge, and the other containing timber of the value of about $1,200, lay at the same wharf immediately below the Suspension or Sixth street bridge. The wharf in question was maintained by the defendant, and tolls were charged and collected from the plaintiffs and others who used it. There was evidence that the rise in the river was not an unusual one for that time of the year, in height at least; but there was evidence that it was attended with an unusually swift current explained, as was claimed, by the fact that encroachments upon the river within the limits of the two cities had narrowed the water-way. It appeared that the wharf, shortly before the time of the loss, had been occupied by the Pittsb. & West. R. Co., which had its tracks in operation down along the wharf nearly to Anderson street, occupying that part where the larger raft lay, and was engaged in building a trestle-track immediately below the Suspension bridge where the smaller raft was. By this occupation, the wharf-posts, ring-bolts, etc., which had been available before for tying to, had been removed, the tracks of the railroad being between them and the river.

There was testimony from which it was claimed by the defendant that at the time of the loss there was about 20 feet of water and the swiftest current ever known in the Allegheny river, at least for thirty-five years; that the plaintiff had not used sufficient strength of lines nor availed himself of the hitching places at hand, and had no breast lines out.

The court, STOWE P. J., charged the jury:

The rule of law is that a city having a wharf or wharves for the accommodation or use of persons navigating streams contiguous to it, is bound to furnish such persons with reasonably safe conveniences and appliances for securing and keeping their vessels, floats, etc., in safety. You must not understand that in such cases cities are to be held as insurers, or liable simply by reason that a loss has occurred; but where a wharf is rented or paid for, as in this case, the city is bound to give him sufficient means of attaching and fastening his boats or floats or rafts or whatever he may have properly moored at the wharf, so that in stress of weather of ordinary character, or

such as could be reasonably foreseen or anticipated, or by a rise or flood in the river of a similar character, even though it may be a high rise or flood, provided it was not of an extraordinary character, and not to have been reasonably anticipated. These ideas cover the whole duty of a party in the position that the defendant is. The city must keep the wharf in ordinarily reasonable good condition, good repair. There must be ordinarily reasonable attaching places so as to securely moor and tie any float or raft or anything else that may be moored at the wharf in any ordinary emergency, any ordinary flood, any ordinary stress of weather or flood and storm together, or anything that would be likely to occur that the city had reason to anticipate. It does not involve the city in responsibility for floods that could not have been foreseen; that were of such an unusual character as to be called extraordinary; but, although it may be quite a high flood, if it is one they were bound to anticipate, such as was occurring from time to time substantially, although it might have been a very little or some higher, yet not amounting to an extraordinary emergency, the city is bound to provide the reasonable appliances for parties to attach their floats to that they may protect themselves from loss.

Now the great question in this case is, were there sufficient tying places furnished by defendant or remaining on the ground within reach of boats, etc., moored at the wharf; such as could have been safely and properly used by the plaintiff in the emergency which arose at the time of this accident. This involves a consideration of the condition of the wharf at that time. Then if you conclude from the evidence that there were reasonably sufficient hitching places to answer any ordinary or reasonably anticipated floods in the Allegheny river, your verdict should be for defendant. But if you conclude otherwise, then you must consider further whether or not plaintiff did all that was reasonably prudent and proper in making use of the means within his reach to prevent his floats from being carried away by the stress of waters.

The whole stress of plaintiff's case is, that he did not have places to tie to furnished by the city, or that there were not places there at all that he could have reached reasonably by reasonable care and prudence, and that because of that he

could not tie his vessels and they went away. Upon this question you must look at all the evidence tending to show whether posts were there that could have been used that were not used, whether there were proper head lines, whether breast lines were proper and usual in such emergency and would have tended to prevent the float from being carried away, and in short everything done or undone, which in the exercise of reasonable care and prudence under the circumstances, should have been done to guard against the loss on part of plaintiff or those in his employ. . . . . .

The plaintiff asks me to say to you:

1. The general rule of law is that those who have a public wharf under their control are bound to keep it in good order, and the force of this obligation is still further increased where it yields its possessor a revenue.

Answer: This is affirmed; but, the duty in no case, as I said in my general charge, exceeds that which is reasonably proper, necessary and prudent. The proposition, however, is affirmed with the qualification in the general charge.[3]

2. The defendant, city of Allegheny, being in possession of the wharf at which plaintiff's rafts were lost, and receiving tolls or wharfage for its use was held to the utmost care of said wharf; and it was a violation of defendant's duty to the public to permit said wharf to get out of repair or neglect to provide means of fastening for the mooring of rafts and other craft at said wharf; and if the jury believe from the evidence that plaintiff's loss on or about June 9, 1881, was occasioned in consequence of said neglect of duty on part of defendant city, then their verdict should be for the plaintiff.

Answer: Affirmed, with the qualification that "utmost care" must be understood to mean only reasonable and proper care in view of the safe mooring of floats, rafts, etc., under ordinary circumstances and floods which should and could have been anticipated by the exercise of reasonable care and foresight.[4]

3. If the jury believe from the evidence that, at the time plaintiff's loss occurred, the city of Allegheny was the proprietor of a public wharf within its corporate limits on the shore of the Allegheny river, keeping the same for hire and

Charge of Court below.

charging and receiving wharfage from the plaintiff for the landing and mooring rafts at said wharf, and that plaintiff's rafts at said wharf were lost or injured in consequence of the neglect of said defendant city to provide and maintain proper and necessary check-posts or ring-bolts, or other appliances for securing and fastening said rafts of plaintiff when lying at said wharf, after notice, then said defendant is liable in damages and their verdict should be for the plaintiff for the amount of his actual loss. .

Affirmed; and it is a very correct, neat statement of the liability of the defendant, with this qualification, however: provided plaintiff used reasonable care and prudence to protect his property before and when the emergency arose.

4. If the construction of the road-bed and track of the Pittsburgh & Western Railroad along said wharf removed any of the fastenings previously placed on said wharf for the purpose of securing boats, rafts or other craft moored at said wharf, then it was the duty of the city of Allegheny to replace the same or provide other safe means of securing said craft.

Answer: This is affirmed, provided sufficient fastening places or posts were not left after the removal of that or those taken or cut away. It is not for us to say whether or not sufficient were left. We only say if there were sufficient left. The fact that one was cut away would not make the city liable, if those left were sufficient. The presumption would seem to be, if they had a certain number there before, which they thought reasonably proper, and one was cut or taken away, that perhaps there was one less than there ought to be. It does not follow. It is for the jury to say, under the testimony, whether they were there, and if not there whether there were sufficient left to answer the purpose of the parties in this particular transaction. It might be there were not half enough posts on the wharf, as a wharf, yet if there were enough within reach of the plaintiff to secure his property, and he neglected to use them as he ought to have used them, exercising reasonable care and prudence in doing what was his duty to do, he cannot complain that somebody else might have been put in a dangerous condition, because the wharf itself was in a bad condition. That fact would not affect his responsibility one way or the other.

5. That if the injury to and loss of plaintiff's property was caused by the obstructions placed upon said wharf in constructing said railroad, then the defendant is liable to the plaintiff for the same.

Answer: Refused. If the loss was occasioned by obstructions arising from the building of the railway alone and sufficient fastening places were afforded by defendant, the plaintiff cannot recover in this suit.

6. That if the dangers to craft moored at said wharf were increased by the construction of said railroad bed and track on said wharf, then the said city defendant was bound to exercise increased care and diligence to guard against dangers and damages arising from that cause.

Answer: Affirmed. If the building of this road along there by piling the wharf or putting it in any shape it may have been put into, increased the dangers by throwing, we will say, the fleets further out in the river, made mooring more difficult, the defendant was bound to have seen or foreseen it and to have provided for the increased danger or the emergency occasioned by the building of the road, and that is apart from whether the road was built with the consent of the city or by the mere act of assembly. It was put there; it was legally there. If it increased the danger and increased danger would make it necessary or prudent to increase the means of protection, the city was bound to provide means of safety accordingly.

Defendant's counsel have asked us to charge you:

1. That the Pittsburgh and Western Railroad Company had a legal right to occupy the wharf in question for its railroad, and if plaintiff's loss occurred by reason of the presence of the railroad he cannot recover and the verdict should be for defendant.

Answer: Affirmed, if this was the sole cause superinducing the accident.

2. If the jury believe from the evidence that the plaintiff's loss below the Suspension Bridge was caused by the fact of the presence of the railroad there, thus preventing his rafts from floating in as far as they otherwise would, then he cannot recover and the verdict should be for defendant.

Answer: Affirmed.[5]

3. If the jury believe from the evidence that that portion of the wharf below the Suspension Bridge was manifestly dangerous by reason of the fact that the Pittsburgh and Western Railroad was being constructed there and the work and the changes on the wharf being in an incomplete condition, then he was bound to avoid the danger, and if he did not do so, but undertook to run the risks and suffered loss, then he cannot recover and the verdict should be for defendant.

Answer: That is affirmed, if the plaintiff saw danger and undertook to run his head into it—took no proper means to guard against it. If the work was in the condition it is alleged to have been in, in an incomplete order, he cannot turn around and blame the city for negligence that lay on his own shoulders. It is true, I have no right to put a trap on my ground, but if you come along, see the trap and run your head in it, and it goes off and catches you, you cannot recover from me, although if you had fallen in accidentally, having a right to be there, you could. That illustrates the idea that point, I presume, is intended to convey.[6] . . . . .

The verdict of the jury was in favor of the defendant. Judgment being entered, the plaintiff took this writ, assigning for error, inter alia:

3, 4. The answers to the plaintiff's points.[3][4]

5, 6. The answers to the defendant's points.[5][6]

*Mr. John S. Ferguson* (with whom were *Barton & Sons*), for the plaintiff in error:

1. The plaintiff as a shipper of lumber, was in the habit of landing his rafts at the city wharf and was charged and had paid wharfage therefor; the invitation to land at the wharf was held out to all comers. The city was therefore bound to keep the wharf in a proper condition for use: Pittsburgh v. Grier, 22 Pa. 54; Allegheny v. Campbell, 107 Pa. 530.

2. In Allegheny v. Campbell, supra, the third point of the defendant in error was identical in language with the plaintiff's second point in this case, and the affirmance of the point by the court below was held to be correct. The qualification in the present case was in effect an instruction that the plaintiff

was bound equally with the city to anticipate the high water, and to know that the city had not provided for the increased peril brought about by the railroad work. In other words, the instruction practically requires every man who lands to examine beforehand whether or not the city has done its duty.

*Mr. W. B. Rogers,* for the defendant in error:

It was the duty of the court in submitting the case to the jury, to explain practically the meaning of the term, "utmost care," as applicable to the case; for it was proper to guard against the idea that the city was an insurer, or bound to provide against extraordinary contingencies. It would not have been just to the city to charge, merely, that it was bound to the "utmost care," or to "the highest degree of care," without in detail stating the care required and guarding against misapprehension of the meaning of the terms.

OPINION, MR. JUSTICE WILLIAMS:

The important question in this case is that raised by the third, fourth, fifth and sixth assignments of error. The action was based upon the allegation that the city had failed to provide its wharf with fastenings sufficient in number and strength to secure boats and rafts from being swept away by floods.

The second point submitted by the plaintiff to the court below asked an instruction to the jury that inasmuch as the city of Allegheny was in "possession of the wharf at which plaintiff's rafts were lost, and receiving tolls or wharfage for its use, it was held to the utmost care of said wharf, and it was a violation of defendant's duty to permit said wharf to get out of repair, or neglect to provide means of fastening for the moorings of rafts and other craft at said wharf; and if the jury believe from the evidence that plaintiff's loss on or about June 9, 1881, was occasioned in consequence of said neglect of duty on part of the defendant city then their verdict should be for the plaintiff." The court affirmed this point, adding this important qualification: "That 'utmost care' must be understood to mean only reasonable and proper care in view of the safe mooring of floats and rafts under ordinary circumstances and floods which could and should have been anticipated by the exercise of reasonable care and foresight." This answer

taken as a whole affirms the proposition that the city was bound to the exercise of the utmost care, and then defines the word " utmost " as meaning reasonable, and the measure of care required as " only reasonable and proper care . . . . . under ordinary circumstances." It left the jury without any clear and adequate declaration of the rule they were expected to apply. It becomes necessary, therefore, to examine briefly into the relation of the parties to each other and the duty resting on the city as the owner of the wharf.

Whoever may be the owner of a public wharf, whether a private person, a corporation, or a municipality, the duties of the owner and the rights of the public are the same. The owner has the exclusive control over the property and its management. The public are invited to use it upon the payment of the established rates of toll or wharfage, and must trust to the security and sufficiency of the appliances afforded them. The wharf of the defendant is upon the bank of the Allegheny river, which is subject to great changes in the volume of its waters and the force of the current, by reason of floods. The navigation is almost entirely descending and is by rafts and heavily loaded boats that come down the river upon the high water. The advantages and the perils of floods enter into the calculations of both the navigator of the stream and the owner of the wharf upon its banks. The craft comes to the market which the city of Allegheny affords, upon the floods, and must depend upon the wharf for security against the swollen current while seeking a purchaser. It is the duty of the owner of the wharf to make suitable preparations for the safety of those who moor their rafts and boats along its side. To undertake a duty for which one is incompetent or is not adequately provided is in itself negligence.

When the public are invited to the wharf of the defendant and charged for the security offered them, they have a right to expect and to depend upon the provision by the city of such appliances for securing and holding their boats and rafts against the current as are sufficient for that purpose. The wharfinger who receives and stores the goods of his customers in his warehouse is liable only for ordinary care, for the goods in store are exposed only to the ordinary perils of storage on the land ; but rafts and boats moored at the defendant's wharf

are exposed to the dangers of the stream. The violence of the winds and the floods are among these dangers. The raftman and the boatman seek security against these at the wharf. The perils are not ordinary, but they are great; and ordinary care, or "reasonable care under ordinary circumstances" is not enough. It is not proportioned to the dangers of the navigation or to the extent of the calamity in case of failure in the undertaking to hold securely. In the case of the City of Pittsburgh v. Grier, 22 Pa. 54, a similar question was raised and this court said: "The interests of commerce imperatively require that the place to which vessels are invited to come should be in a safe condition;" but no more exact definition of the measure of care required was attempted. In the recent case of the City of Allegheny v. Campbell, 107 Pa. 530, the court below affirmed a point asking an instruction to the jury that "the city was bound to the utmost care" in maintaining its wharf in a safe condition for public use. This instruction was assigned for error as a too rigorous statement of the rule, but it was affirmed by this court. Justice PAXSON said, in delivering the opinion of the court: "The plaintiffs certainly have a right to look to the city for redress; for it was upon the city the duty was devolved of keeping the wharf in a safe condition;" but the expression "utmost care" was not commented on.

In the case of the Mersey Docks & Harbor Trustees v. Gibbs, decided in the House of Lords in 1865, the plaintiff's ship was injured on a bank of mud at the mouth of the docks. The trustees denied their liability, as the obstruction was not known to them, and asserted that they were liable only for the failure to exercise ordinary care. But it was held the company was liable for the injury caused by the accumulation of mud at the docks whether they knew of the accumulation or not, if, by their servants, they had the means of knowing, and were negligently ignorant of it. An analogous principle is asserted in the cases in which the duty of a ship or dock company, to provide safe access to their ships for passengers, has come under examination; and such companies have been held to very strict liability for any defect or insufficiency in the appliances used for this purpose: Wh. Neg., par. 823; John v. Bacon, L. R. 5 C. P. 437; Wendell v. Baxter, 12 Gray, 494. The docks and

gangways are held to be highways so far as to give to the public an unobstructed use of them as a means of access to the ship; but as the danger attending their use is much greater than that attending the use of the public highways, so the measure of care required is correspondingly greater. In the case of railroad companies the rule has been held with great steadiness that the duty of the company is to exercise the utmost degree of care consistent with the continuance of the business. In our own leading case upon the subject, Laing v. Colder, 8 Pa. 479, Justice BELL, who delivered the opinion of the court, uses this language: "But, though, in legal contemplation, they (the railroad companies) do not warrant the absolute safety of passengers, they are yet bound to the utmost care. The slightest neglect against which human prudence and foresight may guard, and by which hurt or loss is occasioned, will render them liable to answer in damages."

The foundation on which the rule in all these cases rests, is the character of the danger to which the property or person is exposed, and the absolute dependence of the public upon the care and fidelity of those who serve it.

The same words "utmost care" have been used to define the degree of care due from the owner of a public wharf to the navigator of boats and rafts; from a ship company to the public passing over its gangways; from a railroad company to passengers being transported in its cars. In each case, however, they are to be understood in connection with the subject to which they are applied. In the case of the Penn. R. Co. v. Fries, 87 Pa. 234, negligence is defined as the absence of care according to the circumstances. Drawn out at length, this is a statement that the nature and extent of the peril to be guarded against and the extent of the calamity to be suffered in case of failure, are always to be considered in determining the degree of care to be exercised in any given case. Whatever a diligent man would deem necessary under any given circumstances for the preservation of his own property, must be done by the individual, or corporation, or city, that undertakes, for hire, the preservation of property for the public. The "utmost care" therefore, which was due from the city of Allegheny, required the use of all the appliances and precautions that a diligent man owning the rafts and owning the wharf

would deem it proper to employ in the preservation of his own property from the perils of the river. This definition or statement of the care due from the defendant city is in harmony with the cases cited above, and is that by which the question of its negligence in the management of its wharf is to be determined.

> Judgment reversed, and venire facias de novo awarded.