# Pauksztis, Appellant, *v.* Raeder Blank Book, Lithographing & Printing Company.

*Bailment—Contract—Agreement to insure—Custom of trade—Corporation.*

In an action against a corporation engaged in the business of bookbinding, to recover damages for the loss of books delivered to the corporation to bind, but destroyed by fire, evidence is admissible that the manager of the corporation agreed as a part of the contract of bailment to insure the books against loss by fire, and that there existed a general custom of bookbinding establishments to insure the property of patrons left with them for binding. It is reversible error to reject such evidence.

Argued April 12, 1905.   Appeal, No. 370, Jan. T., 1904, by plaintiffs, from judgment of C. P. Luzerne Co., Jan. T., 1901, No. 431, on verdict for defendant in case of Joseph J. Pauksztis and Charles Brazis, trading as Jos. J. Pauksztis & Co. v. The Raeder Blank Book, Lithographing & Printing Company. Before MITCHELL, C. J., BROWN, MESTREZAT, POTTER and ELKIN, JJ.   Reversed.

Assumpsit for goods delivered on a contract of bailment, and destroyed by fire. Before FERRIS, J.

The facts are stated in the opinion of the Supreme Court.

*Errors assigned* were various rulings on evidence referred to in the opinion of the Supreme Court.

*Paul J. Sherwood* with him *William N. Reynolds, Jr.*, for appellant.—Evidence of custom to insure is admissible: Hamilton v. Moore, 94 Ga. 707 (19 S. E. Repr. 993); Gordon v. Little, 8 S. & R. 533; Adams v. Pittsburg Ins. Co., 95 Pa. 348; Helme v. Ins. Co., 61 Pa. 107; Siter v. Morrs, 13 Pa. 218; Kelton v. Taylor, 79 Tenn. 264; Brown v. Hitchcock, 28 Vt. 452; Pittsburg v. O'Neil, 1 Pa. 342; Needy v. R. R. Co., 22 Pa. Superior Ct. 489; McMasters v. Penna. R. R. Co., 69 Pa. 374; Carter v. Coal Co., 77 Pa. 286; Silliman v. Whitmer & Sons, 11 Pa. Superior Ct. 243; Allam v. R. R. Co., 183 Pa. 174; Jacobs v. R. R. Co., 19 Pa. Superior Ct. 13; Boorman v. Jenkins, 12 Wend. (N. Y.) 566; McKeefrey v. Connellsville Coke & Iron Co., 56 Fed. Repr. 212.

Even if a bailee were not otherwise responsible, he may make himself liable by express undertaking. The undertaking to insure was within the province of the defendant, and hence within the authority of its general manager: Tower v. Supply & Storage Co., 159 Pa. 106; Thomas v. Cummiskey, 108 Pa. 354; Smith American Organ Co. v. Abbott, 11 Pa. C. C. Rep., 319; Hoy v. Holt, 91 Pa. 88; Express Co. v. Schlessinger, 75 Pa. 246; Dixon v. Breon, 22 Pa. Superior Ct. 340; Tanner v. Oil Creek R. R. Co., 53 Pa. 411.

*B. R. Jones*, with him *Thomas H. Atherton*, for appellee.—A bailee in the absence of a special agreement is not an insurer of the chattel intrusted to his care and is not responsible for losses resulting from dangers necessarily incident to its use, nor from inevitable accidents or irresistible force: Story on Bailments, sec. 25; Woodruff v. Painter & Eldredge, 30 W. N. C. 396; Second Nat. Bank of Erie v. Smith, 8 Phila. 68; First Nat. Bank of Carlisle v. Graham, 79 Pa. 106; Zell v. Dunkle, 156 Pa. 353; Walton v. Colwyn Borough, 19 Pa. Superior Ct. 172.

The bailee in the present case not having insured plaintiffs' property, the bailor attempted to charge the bailee with want of ordinary care by endeavoring to show that it was the general custom among establishments carrying on the same line of business as the defendant company to insure their patrons' goods. No authority has been found in Pennsylvania for any proposition of that kind and none has been cited by appellants: Dempsey v. Dobson, 184 Pa. 588; Collins v. Mechling, 1 Pa. Superior Ct. 594; Hamilton v. Moore, 94 Ga. 707 (19 S. E. Repr. 993); Ambler v. Phillips, 132 Pa. 167; Weld v. Barker, 153 Pa. 465; Corcoran v. Chess, 131 Pa. 356.

OPINION BY MR. JUSTICE POTTER, June 22, 1905:

As stated in the charge of the court, the undisputed evidence in this case shows that the defendant company is, and was in 1900, a corporation engaged in the business of printing, bookbinding and lithographing. The plaintiffs had dealt with the defendant company for some years. About July, 1899, the defendant company moved its plant, from one location to another, together with the goods and materials belonging to its customers in its possession, including some material belonging to plaintiffs. J. W. Raeder was in the same business individually before the defendant company was incorporated; and afterwards he was a stockholder, director and manager of the business. It is also conceded that he was the authorized agent for the purpose of making contracts relating to the general printing, bookbinding and lithographing business of the company. It appears that on or about August 24, 1900, a wagon was sent by Mr. Raeder to the plaintiffs' place of business together with a letter authorizing and requesting the plaintiff to deliver to the driver of the wagon, for cartage to the defendant's factory, the sheets or forms of printed matter which plaintiffs then had on hand and which were to be folded, stitched and covered by the defendant company with covers to be furnished by the plaintiffs pursuant to a contract previously entered into between them. A quantity of such material was delivered by the plaintiffs to the driver and by him hauled to the defendant's place of business, and there received and placed in the store-room.

On November 1, 1900, a disastrous fire occurred, having been

started by an explosion of gas under the boiler in the basement of the building occupied by the defendant, and by this fire the manufacturing plant and stock were damaged and in great measure destroyed. All the material of the plaintiffs then in the custody of the defendant, for the purpose of being bound into books, was also totally destroyed by this fire and was uninsured either by the plaintiffs or the defendant.

There was evidence upon the part of the appellant, that Raeder, for the defendant company, solicited the business from the plaintiff, and that he stated as part of the inducement, that he had insurance, which would cover the goods. In the language of the witness, speaking of this conversation with Raeder, " He says, I got insurance ; customer insurance, which will cover yours. I told him if you agree to have insurance (on) our goods, I give a job."

The trial judge instructed the jury that the procuring of insurance upon the goods of customers left in the care of the defendant company was not incidental to the business of binding, and that even if the agent and manager did agree to procure insurance for the goods and material of this plaintiff, it was beyond his authority and the defendant company would not be bound by it. He therefore gave binding instructions in favor of the defendant. This is assigned for error, as is also the refusal to permit proof that the general custom of the business was to carry insurance to protect the property of customers, upon the premises, and that a failure to do so was lack of due care. We think that the evidence to show that it was the general custom of bookbinding establishments to insure the property of patrons left with them for binding, should have been admitted. It was the duty of the defendant company to take every reasonable precaution for the preservation and safety of the property of plaintiff while it was in its possession under the contract of binding. " Whatever a diligent man would deem necessary under any given circumstances for the preservation of his own property, must be done by the individual or corporation that undertakes for hire, the preservation of property for the public :" Willey v. Allegheny, 118 Pa. 490. Proof that it was customary in the business to insure the property of customers, against fire, would be of importance in determining whether the defendant had used due care

in this instance. But certainly if there was a special agreement to provide insurance, the defendant would be bound by it. We have no hesitation in saying that if Raeder, the manager, did agree to procure insurance, his agreement was binding upon the company. At this day the use of insurance to protect property against fire, is so common, that it cannot be considered as being beyond the scope of an agreement for the storage and safe keeping of property, left to be worked upon. The danger of fire was only incidental, and the procuring of insurance is the modern and most effective way of guarding against that risk. If there was an agreement, made by Raeder, to procure insurance, it would be as much in the course of the business and as much an incident thereof, as the protection of the material against the weather or against robbery. The first, second, third and fourth assignments of error are sustained, the judgment is reversed, and a venire facias de novo is awarded.