## Commonwealth ex rel. Schwartz *v.* Bierly, Appellant.

Argued April 8, 1940.  Before SCHAFFER, C. J., MAXEY, DREW, LINN, STERN, BARNES and PATTERSON, JJ.

*W. L. Pace,* for appellant.

*E. C. Marianelli,* for appellee.

OPINION BY MR. JUSTICE DREW, May 13, 1940:

This is a mandamus proceeding in which the Commissioners of Luzerne County, acting as the executive and administrative officers of the Luzerne County Institution District, are seeking, through the District Attorney of Luzerne County, ex relatione, to compel appellant, the Controller of Luzerne County, to approve bills for fire insurance premiums on four separate fire insurance policies, which the Commissioners caused to be issued under the circumstances hereinafter set forth.

The Act of June 24, 1937, P. L. 2017, the "County Institution District Law", abolished the Central Poor District of Luzerne County, an independent poor district, embracing within its territorial boundaries twenty-three separate and distinct municipalities in Luzerne County, and transferred the fee simple title of all of its real and personal property to these municipalities in proportion to the last assessed valuations of real estate for county purposes in each. The County Commissioners as officers of the Institution District under the Act were given possession of all real estate, and all tangible personal property used in connection therewith, so long as they decided the purposes of the District required it, or until they acquired the property by purchase or by right of eminent domain. During

the period of possession of said property by the District, it was required to pay a fair rental to be fixed and apportioned by the Court of Common Pleas on petition of the Commissioners or of any municipality interested.

By section 1 of the Act of September 29, 1938, P. L. 53, the buildings with which we are here concerned were "transferred to and vested in the Commonwealth" and it was provided that, if found suitable, the buildings should thereafter be used as a State mental hospital, ". . . but if such property shall, within one year thereafter, be found unsuitable for such purpose, or shall, within one year after transfer to and use by the Commonwealth as a State mental hospital, be thereafter abandoned by the Commonwealth as such a hospital . . ., then, in either event, such building, lands and personal property so transferred to the Commonwealth shall absolutely revert to and vest in the county, city or institution district from which transferred, and the Commonwealth shall have no further claim or title thereto."

In section 7 of the same Act, it is stated: "After the effective date of this act and until the management and operation of a particular institution is formally assumed by the Department of Welfare, or until a particular institution is closed under the provisions of this act, but not later than the thirty-first day of May, one thousand nine hundred thirty-nine,* the county, city, or institution district engaged in the operation and management of that institution *shall continue to bear the expense of administering and operating the institution,* and the Commonwealth shall contribute towards the expense of indigent patients therein to the same extent and in the same manner as pertained under existing laws on the effective date of this act." (Italics added.) Briefly, this section is a legislative command that the District bear all the operating expenses, which of necessity included insuring the buildings against fire.

---

* By the Act of May 25, 1939, P. L. 193, this date was extended two years.

In view of the foregoing circumstances, the Commissioners, in the exercise of common sense and good judgment, took out four policies of fire insurance in the total amount of $2,000,000 upon buildings of an estimated value of $2,500,000, purporting to protect the District as the sole and unconditional owner thereof against all direct loss and damage by fire. The policies were so issued on December 3, 1938, and the Commissioners approved bills for payment of the premiums upon them.

On March 10, 1939, a rider was attached to each of the four policies setting forth that a dispute existed as to the true owner of the property insured arising from the Acts of 1937 and 1938, supra, but that: "It is understood that the foregoing shall not prevent payment of any loss to the Luzerne County Institution District." This rider further states that "Owing to the indeterminate ownership of the property . . ., it is hereby understood and agreed that in the event that this policy is surrendered for cancellation at any time before the expiration of same, any excess premium paid above the pro rata premium for the expired time shall be refunded to the assured."

When the District officers submitted to appellant Controller for his approval the bills received for the fire insurance premiums due on the policies, the Controller refused to approve them, after which the present mandamus action was instituted.

The Controller filed a Return in which he admitted he had refused to approve the bills and gave as his reasons for so doing that: (a) the policies of insurance were void and of no legal effect; (b) the ownership of the major portion of the property insured was in the Commonwealth of Pennsylvania under the provisions of the Act of 1938, supra; (c) the policies were for the term of one year; (d) payments were required prior to the rendering of the insurance service; (e) or other insurance companies would furnish insurance, and would take one-half payment at the commencement of the term,

and would permit cancellation at the expiration of six months on a pro-rata basis.

A demurrer was filed to appellant's Return, and the learned court below awarded a writ of peremptory mandamus commanding the Controller to approve the bills, after which the Controller took this appeal, and a rule for supersedeas was later made absolute.

We agree with the learned court below that the riders effectively eliminated all of respondent's reasons for objecting to approval of the bills. Respondent contends, however, that the four policies as originally issued were void, since as regards the "overwhelmingly major portion of the property so insured" the interest of the District was not that of "unconditional and sole ownership" as prescribed by the terms of the policies, and that therefore the riders could not operate to "revivify lifeless, void" policies. Respondent is mistaken in the premise upon which he bases his conclusion. The policies as originally issued were not void. That the District was the "sole and unconditional" owner of this property within the meaning of the policies is readily demonstrable. This court defined the clause, "sole and unconditional ownership", in *Livingstone v. Boston Insurance Co.*, 255 Pa. 1, when, in speaking through Mr. Justice WALLING, we said (p. 4): "The provisions of an insurance policy are construed favorably to the assured; and where he has an insurable interest and is the substantial owner of the property so that *the entire loss falls on him,* it satisfies the above quoted clause as to ownership, although he may not have a perfect legal title to the insured property." (Italics added.) As we have stated above, the Act of 1938, supra, places the expense of insuring the property in question upon the District. It is well settled that one under a duty to insure the property of another is presumptively required to insure it for its full value, and a failure to do so entails liability for all the resulting damages in the event of its loss: *Broussard v. South Texas Rice Company,* 103

Tex. 535; *Ela v. French,* 11 N. H. 356; *Shoenfeld v. Fleisher,* 73 Ill. 404; *Pauksztis v. Raeder Blank Book, Lithographing & Printing Company,* 212 Pa. 403. As was pointed out by the learned court below: "Obviously the District held such a relationship to the properties insured that their destruction by fire might involve it in a loss, for in the event the buildings should be destroyed by fire the Commonwealth might reasonably contend that the County Commissioners failed in their duty if they had not protected the buildings against destruction by fire." By legislative mandate the duty to insure the buildings for their full value rested upon the District. If a fire should occur when there had been a failure to comply with this duty, the entire loss would fall upon the District. Consequently the District unquestionably had the "sole and unconditional ownership" of the property insured, according to the established usage of that clause, and there is not the slightest doubt that the policies are of full binding force and effect.

Of the numerous assignments of error we have treated only of those requiring discussion. Throughout the controversy respondent's conduct has been at variance with the limited discretion vested in him as Controller. He has failed to realize that his discretionary power does not extend to the revision of lawful contracts made by other departments of government within their proper sphere. If the contract be on its face regular, and the requirements of the statutes in connection therewith have been fully met, the Controller has no option in the matter; he is bound to approve it. His duty in such circumstances is ministerial: *Thayer v. McCaslin,* 314 Pa. 553; *Erie Anti-Tuberculosis Society v. Willis,* 322 Pa. 97.

Orders affirmed; appellant to pay costs of both appeals.