## Commonwealth ex rel. Rauhauser v. Snyder

*John F. Rauhauser, Jr.,* for Commonwealth.
*W. Burg Anstine,* for defendant.

ATKINS, P. J., November 27, 1967. — This is an action in mandamus which was tried before the court without a jury, pursuant to the Act of April 22, 1874, P. L. 109, sec. 1, as amended, 12 PS §688. No request was made by either party for specific findings of fact; however we do set forth those facts which are essential to a disposition of the case.

On August 2, 1966, the Council of the Third Class City of York, Pa., passed the following ordinance:

"Be it ordained by the Council of the City of York, Pa., and it is hereby ordained by the authority of the same as follows:

"Section 1: The City of York is hereby authorized to grant to the Farquhar Development Company of Arlington, Virginia, organized under the laws of the State of Virginia, an option for leasing by the Company from the City of York of certain tracts of land, in the City of York identified as Parcels 2 and 3, Block No. 1 and Parcel 2, Block Number 7, lying between North Duke Street, East North Street, North

Queen Street and East Gas Avenue, all being shown on the property map for the Farquhar Urban Renewal Area, prepared by the Redevelopment Authority of the City of York, in accordance with the copy of the form of option attached to this ordinance, which is made a part hereof.

"Section 2: The Mayor and the City Controller, shall execute said option on behalf of the City after filling in the blank spaces thereof".

On August 12, 1966, the ordinance was vetoed by the mayor. On August 18, 1966, the council, by the requisite majority, voted to override the mayor's veto. The City of York is governed by the Mayor-Council, Plan A, form of government, pursuant to the Optional Third Class City Charter Law of July 15, 1957, P. L. 901, sec. 101, as amended, 53 PS §41101. The proposed option agreement, which was made a part of the ordinance contains the same description of the land covered as set forth in the ordinance above. Then follows this provision:

"This is an option to lease land for a period of not less than 55 years at an annual rental to be determined by the F.H.A. which amount is based upon 6 percent of the value ascribed to the land, but in no event shall the amount of said rental exceed the maximum amount to be determined economically feasible for the development of the project".

After the council voted to override the mayor's veto, the option agreement was presented to the mayor for signature on September 8, 1966, but he refused to sign it, and has not signed it to this time.

This action was then instituted on April 1, 1967, by the district attorney in his name seeking a writ of mandamus to compel the mayor to execute the option agreement. In his answer to the complaint, the mayor has alleged many reasons for his refusal to sign the

agreement, and he repeated them with some further explanation on the witness stand. Many of these reasons refer to the financial responsibility of the optionee and to the allegation that the agreement would not be to the best interest of the city. He also alleges that the agreement is so lacking in specificity as to be invalid.

It is plaintiff's argument that this ordinance is now the law of the city and that the mayor has no discretion in the matter, since he is commanded by the ordinance to sign the agreement. This argument is based on the well known principle that mandamus will lie to compel the doing of a purely ministerial act where there is no discretion to be exercised by the party who is required to do the act: Commonwealth ex rel. Schwartz v. Bierly, 339 Pa. 213. It will also lie to compel an official of the government to exercise his discretion regarding his act, but will not lie to dictate the contract to be arrived at through the exercise of his discretion: Tanenbaum v. D'Ascenzo, 356 Pa. 260. The authority of the writ may be used to compel a mayor of a city to sign a contract: Western Union Telegraph Co. v. City of Philadelphia, 2 D. & C. 55. This case perhaps represents more authority than many common pleas court opinions, since the author of the opinion was Hon. Horace Stern, who later became Chief Justice of Pennsylvania. In its facts, that case is strikingly similar to the one before us. The council of Philadelphia enacted an ordinance, over the mayor's veto, granting the telegraph company permission to open certain streets in the city and to construct and maintain conduits therein and to lay and maintain cables and wires for telegraph purposes. The ordinance required the company to enter into an agreement with the city wherein it would bind itself to comply with all of the obligations imposed upon it by the ordinance.

When the ordinance was presented to the mayor for his signature, he refused to sign it, alleging that the ordinance is ill advised and does not provide for any compensation for the opening of Chestnut Street, but a bill in equity is pending before the court for the enjoining of said work and that there is no duty on the part of the mayor to sign the agreement. The court held that the agreement was required to be signed by a valid ordinance, that the agreement itself was valid and that, therefore, the mayor had no discretion in the matter.

It then appears that in our case, if the option agreement itself is valid, then the writ sought here should be issued. We are not, however, satisfied that this is a valid enforceable agreement. "It is a well-established principle of the law of contracts that it is essential to the validity of any contract, including an option agreement, that a definite price either be stated in the contract or be ascertainable from the contract's express or implied provisions": 2 A.L.R. 3d 701.

In Pennsylvania it has been held that a price to be agreed upon by the parties in the future renders an option agreement invalid: Smoyer v. Roth, 10 Sadler 32. This principle has been recognized in Driebe v. Fort Penn Realty Company, 331 Pa. 314. See also 17 Am Jur. 2d Contracts §82.

It is not possible for anyone to determine from this agreement what the rental shall be in the contemplated lease. While it is stated to be based on six percent of the value ascribed to the land, it does not say by whom the value is to be ascribed. At the trial it was assumed by the plaintiff that it was to be ascribed by the FHA. It says that the rent is to be fixed by the FHA and it says it is to be based upon six percent of the value ascribed to the land, but it does not say FHA shall value the land. It then goes on to provide that after all

the rent may not be based upon six percent of the ascribed value of the land, for it in no event shall exceed "the maximum determined to be economically feasible for the development of the project".

Again the question may be asked, determined by whom. The agreement does not say. If it be assumed that the economic feasibility is to be determined by the FHA, the question that then occurs is by what standards is economic feasibility to be determined. What may be economic feasibility for a developer who can furnish a substantial portion of the capital investment from his own funds, may be disastrous to one who has to borrow all or nearly all of his capital investment. Where the contract itself is invalid the public official cannot be compelled by mandamus to execute it. In D. N. Corporation v. Roudabush, 309 Pa. 393, where the director of public safety of the City of Johnstown refused to approve a contract which did not correspond with the specifications, the Supreme Court held that he could not be compelled to execute the contract because it was invalid.

Also in Commonwealth v. Jones, 283 Pa. 582, an attempt was made to have the county controller approve a warrant for payment of funds to pay for work done where the amount involved required the advertising for bids. Such advertising was not had. The court held that the controller could not be compelled to do what ordinarily would be a purely ministerial act. We have no hesitancy to conclude that this agreement is so vague in this respect as to render it invalid, and therefore unenforceable.

Accordingly, this order is entered:

And now, November 27, 1967, a verdict is rendered in favor of defendant and against plaintiff. Notice of this order shall forthwith be given by the prothonotary to the parties or their attorneys, and if no exceptions

are filed within 30 days after service of such notice, prothonotary is directed to enter judgment on this verdict. The costs shall be paid by the City of York.